The STATE of Ohio, Appellee,

v.

ALEXANDER, Appellant.

[Cite as *State v. Alexander* (1997), 120 Ohio App.3d 164.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70414.

Decided May 9, 1997.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Ronald James,* Assistant Prosecuting Attorney, for appellee.

*Jerome Silver & Assoc.* and *Michael L. Wolpert; James R. Willis,* for appellant.

---

James D. Sweeney, Chief Judge.

Defendant-appellant Avery B. Alexander (d.o.b. June 3, 1963) appeals from the denial of his motion to suppress evidence seized following an investigative stop and his subsequent jury trial conviction for having committed the offenses of aggravated trafficking (of cocaine, R.C. 2925.03), carrying a concealed weapon (R.C. 2923.12), and having a weapon while under a disability (R.C. 2923.13), each offense containing violence specifications. For the reasons adduced below, we affirm.

The facts giving rise to the investigative stop and subsequent arrest are unremarkable. On May 5, 1995, Cleveland Police Officer Xavier Lynch was on basic patrol at approximately 4:00 a.m. in a squad car with his partner, Officer William Walker, in the vicinity of East 105th Street and Westchester Avenue. The area is known for its high incidence of drug activity, in particular, drug sales by pedestrians to passing motorists, who stop their cars briefly to effectuate the sale. The officers observed the defendant and a couple of other males along the roadway, attempting to flag down passing automobiles. The officers observed a vehicle stop in front of a boarded-up house, observed males (one of whom was the defendant) approach the stopped car and return to the sidewalk area a short time later, at which time the stopped car drove away. Based on the officers' experience, they suspected that drug transactions were occurring.

The officers then drove up toward the three men whom they had just observed dealing with the previously stopped vehicle, and motioned the males to approach the police vehicle for the purpose of answering a few questions. Upon seeing the approaching police car, the three males turned and ran away. The two officers stopped their car and pursued the suspect males on foot through a series of several yards between streets. The officers radioed for assistance. The defendant, having fallen over a fence, was apprehended by Officer Lynch. Officer Walker arrived a very short time later, finding Officer Lynch struggling with the defendant on the ground. Officer Lynch, having seen a pistol in a holster on defendant's waist during the initial struggle, warned Officer Walker that the defendant, who repeatedly tried to reach for his waist area, had a firearm in his possession. The two officers then struggled with the defendant for approximately twenty minutes before spraying the defendant in the face with pepper spray and finally subduing the combative defendant. He was observed to be wearing an empty holster on his belt when he was finally handcuffed, and a semi-automatic 9mm pistol and several rocks of crack cocaine were later found, in plain view on the ground, by the police in the backyard area where the officers had struggled with the defendant. A small quantity of marijuana was found in one of the defendant's pockets when he was booked at the stationhouse.

The court denied the pretrial motion to suppress evidence.

At trial, the four police officers who testified at the suppression hearing (Officers Lynch and Walker, and two other assisting officers) restated the substance of that testimony. In addition, the prosecution produced the testimony of Cynthia Lewis of the Cleveland Police Department Scientific Investigative Unit, who identified the thirty-two pieces of whitish material (6.24 grams total) found at the arrest scene as crack cocaine and also identified the substance found in the defendant's pocket at booking as marijuana (1.89 grams total).

The defense offered the testimony of four witnesses, one of whom was the defendant, during its case in chief. The first defense witness, Annie Becton, claimed that she was at a street party on Hampden Avenue, which is one street over from Westchester Avenue, when the police arrived that night, and she and the other partygoers, approximately two dozen in number, fled when the police approached.[1] Becton claimed that the firearm and holster the police found were hers and that she discarded the firearm and holster onto soft ground as she ran through the back yards from the police. Additionally, Becton claimed to have purchased the firearm and holster from a man on the street approximately six hours prior to the offenses herein, and stated that the area is known for its drug activity.

The second witness for the defense was Virgillene Martin, who testified to the following: (1) she was living on Westchester Avenue at the time of the offenses herein and recalled talking to the defendant for a brief period of time, around 3:30 a.m., in front of her house and then she returned to bed; (2) she recalled hearing what sounded like a street party going on that morning on Hampden Avenue; (3) later that morning she heard a commotion outside her home, so she looked out a window to investigate, at which time she observed two policemen in her driveway hitting the defendant; (4) she watched this altercation for a short period of time and then returned to bed; (5) the area is noted for high drug activity.

The third witness for the defense was Anthony Riggs, who claimed to have been on Westchester Avenue that morning talking with some other males, who testified to the following: (1) he heard the sound of loud music coming from the vicinity of Hampden Avenue, but did not personally attend that party; (2) he saw no evidence of drug transactions that evening on Westchester Avenue; (3) he and approximately ten other people who were standing and talking to one another near a boarded-up house on the street fled when the police approached and someone shouted "65," which is a code indicating the presence of police.

The defendant testified as the fourth and final witness for the defense, as follows: (1) he attended a party on Hampden Avenue until approximately 3:00 a.m., at which time he and a few other males walked over to Westchester Avenue and began talking with some people on that street; (2) a short time later, Martin briefly talked to him in her driveway; (3) a short time later, someone shouted "65," so he fled with the crowd because he was confused and thought it might be a drive-by shooting situation; (4) he was aware at the time that this was an area with a great deal of criminal activity; (5) he stopped at the fence in a back yard,

---

1. The police officers did not observe any street party when they approached the scene that morning.

at which point he was tackled by someone who pulled the defendant's sweatshirt over the defendant's head and started to hit him; (6) he struggled to free himself because he could not breathe; (7) about thirty seconds later, another person arrived and joined in the struggle, at which time he was immediately thrown to the ground and handcuffed, and then placed in a patrol car with the sweatshirt still over his head; (8) he denied having a firearm or drugs in his possession that morning; (9) he can bench-press two hundred fifty pounds and did elbow his attackers a few times, but did not punch them.[2]

Three assignments of error are presented for review. The first and second assignments will be discussed jointly, since they both address the motion to suppress.

## I

"The Court erred, and the defendant was denied due process, when in ruling on the motion to suppress the court failed to set forth the basis for its ruling, as is mandatorily required by Crim.R. 12(E)."

## II

"The court erred when it denied, summarily so, the defendant's motion to suppress."

Crim.R. 12(E) provides:

"Ruling on Motion. The court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means.

" * * *

"Where factual issues are involved in determining a motion, the court shall state its essential findings on the record."

In the case *sub judice,* the trial court heard the evidence of both parties relative to the motion to suppress and the parties' closing arguments, and stated the following at the close of the suppression hearing:

"THE COURT: Thank you, Mr. Wolpert. Based upon the testimony of the State's witnesses and the testimony of the defense witnesses, and considering the totality of the circumstances, the Court finds there was probable cause. And, therefore, defendant's motion to suppress is overruled.

"Anything further, gentlemen?

---

**2.** The defendant is five feet nine inches tall and weighs approximately two hundred twenty-five pounds.

"MR. JAMES: No, your Honor.

"THE COURT: February 28th at nine o'clock will be the trial in this matter.

"(Thereupon, proceedings were concluded.)"

In reviewing the record with reference to the first assignment of error, we note that "in order to invoke Crim.R. 12(E), the defendant must request that the court state its essential findings of fact in support of its denial of a motion." *State v. Loza* (1994), 71 Ohio St.3d 61, 72–73, 641 N.E.2d 1082, 1098, citing *State v. Benner* (1988), 40 Ohio St.3d 301, 317, 533 N.E.2d 701, 717–718. In the case *sub judice*, counsel for the defense did not request findings of fact from the trial court. Thus, the defense has not preserved this issue for review. Even had the error been preserved, inadequate findings of fact are treated as harmless error where the lack of such findings does not prevent the appellate court from fully reviewing the suppression issues. See *State v. Brewer* (1990), 48 Ohio St.3d 50, 60, 549 N.E.2d 491, 501–502. The record of the suppression hearing herein and the arguments presented by counsel at the trial court permit this court to fully review the issues presented in the motion to suppress. Accordingly, appellant's first assignment of error is overruled.

Turning to the second assignment of error, one issue is whether the police had probable cause to stop the defendant. The standard of review relative to an investigatory stop was stated in *State v. Walker* (1993), 90 Ohio App.3d 132, 134, 628 N.E.2d 91, 92–93:

"In *State v. Bobo* (1988), 37 Ohio St.3d 177, 178–179, 524 N.E.2d 489, 491, the Ohio Supreme Court stated:

" 'The appellant, State of Ohio, contends that the officers had a reasonable suspicion to stop Bobo under the guidelines found in *Terry v. Ohio* (1968), 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889], 44 O.O.2d 383. The court in *Terry* stated at 19–20 [88 S.Ct. at 1879, 20 L.Ed.2d at 905], 44 O.O.2d at 392:

" ' " * * * In determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." '

" 'The court further stated at 21–22 [88 S.Ct. at 1880, 20 L.Ed.2d at 906], 44 O.O.2d at 393:

" ' " * * * And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant the intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the

seizure or the search 'warrant a man of reasonable caution in the belief' that the action was appropriate?" '

"The court went on to evaluate seven separate factors to consider in determining the justification for an investigative stop: an area of high drug activity, the lateness of the hour, the experience and training of the officer, the officer's familiarity with the area and how drug transactions occur, and the officer's observation of defendant popping up and then ducking down or leaning forward, which may indicate an attempt to conceal a gun or drugs."

In the present case, there is no question that the area was known for its high amount of drug activity, that the hour was very late, that the officers were adequately experienced and trained in the detection and arrest of drug offenders. However, the only activity which the officers could observe, which prompted the approach of the officers, was (1) a trio of males briefly approach a car which had pulled over for a short period of time, and then the males were seen to walk back to the sidewalk when the stopped car had pulled away; and (2) the trio of males running away upon the approach of the officers. It has previously been held that the mere fact of a suspect running away from an approaching officer in a high drug activity area is insufficient to justify an investigative stop. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Walker, supra; State v. Fincher* (1991), 76 Ohio App.3d 721, 603 N.E.2d 329; *State v. Arrington* (1990), 64 Ohio App.3d 654, 582 N.E.2d 649; *State v. Smith* (Mar. 4, 1993), Cuyahoga App. No. 64221, unreported, 1993 WL 58531; *State v. Porath* (July 30, 1992), Cuyahoga App. No. 60655, unreported, 1992 WL 181677; *State v. Hewston* (Aug. 2, 1990), Cuyahoga App. No. 59095, unreported, 1990 WL 109183. Additionally, the officers observed no furtive movements by the suspects or the occupants of the stopped vehicle or any passing of articles between the pedestrian suspects and the occupants of the stopped vehicle that would raise a reasonable suspicion of a drug transaction given the other factors present. *State v. Bobo, supra.* This vague suspicion by the police of drug. activity, without the presence of any furtive movements by the suspect upon the approach of the police, is insufficient to prompt an investigative stop at the curb. However, once the officers' suspicions were aroused by the flight of the suspects, and coupled with the other *Bobo* factors present, the officers properly acted within their authority provided by *Bobo* and *Terry* in giving chase to the fleeing suspects. For purposes of the application of the Fourth Amendment, it must be determined at what point the suspect was seized.

In *California v. Hodari* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690, the court was presented with a factual pattern substantially identical to the present case, in which a narcotics trafficking suspect, selling drugs to the occupants of temporarily stopped automobiles, fled upon the approach of a police

patrol car. The officers in *Hodari,* whose suspicions were aroused by the sight of the suspect fleeing on their approach, chased the suspect. This suspect, before being tackled and seized by the police, discarded a rock of crack cocaine. The police then recovered the discarded cocaine and arrested the suspect on the basis of drug law violations. Justice Scalia, writing for the majority, determined that despite the lack of reasonable suspicion to justify a brief investigatory stop at curbside pursuant to *Terry v. Ohio, supra,* the suspect was not "seized" for purposes of the Fourth Amendment until he was physically tackled and, therefore, the abandoned cocaine was not the fruit of a seizure and was not subject to exclusion. The evidence sought to be suppressed in the present case was abandoned before the defendant was seized, or was found on defendant's person following his seizure as part of a lawful pat-down search that flowed from the struggle with the police. Thus, applying *Hodari,* the evidence herein was not the fruit of an unreasonable seizure and was not subject to exclusion.

The second assignment of error is overruled.

## III

"The verdicts finding the defendant guilty as charged of aggravated trafficking (R.C. 2925.03), carrying a concealed weapon (R.C. 2923.12), and having a weapon while under a disability (R.C. 2923.13) are against the manifest weight of the evidence and are contrary to law."

The standard of appellate review for the argument presented in this assignment was recently stated in *State v. Wigley* (Feb. 6, 1997), Cuyahoga App. No. 69920, unreported at 7–9, 1997 WL 47705:

"The standard of review for an appeal on the grounds of manifest weight of the evidence is as follows:

" 'In determining whether the verdict is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' *State v. Davis* (1988), 49 Ohio App.3d 109, [550 N.E.2d 966,] paragraph three of the syllabus.

" 'A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.' *State v. Eley* (1978), 56 Ohio St.2d 169, [10 O.O.3d 340, 383 N.E.2d 132] paragraph one of the syllabus.

"This court also notes that the credibility of the witnesses is primarily the trier of fact's determination. *State v. Grant* (1993), 67 Ohio St.3d 465, 476 [620 N.E.2d

50, 64]; *State v. DeHass* (1967), 10 Ohio St.2d 230 [39 O.O.3d 366, 227 N.E.2d 212]."

■ Having reviewed the testimony and evidence presented, we conclude that the verdicts were supported by the manifest weight of the evidence.

The third assignment of error is overruled.

*Judgment affirmed.*

KARPINSKI, J., concurs.

O'DONNELL, J., concurs in judgment only.