DECISION.
Plaintiff-appellant, the city of Cincinnati, appeals the judgment of the municipal court granting defendant-appellee Cheryl Senteney's motion to suppress.[1] Senteney had been cited by Cincinnati Police Officer Eric Vogelpohl for a violation of R.C. 4507.02(D)(2). Senteney's motion asserted that evidence flowing from an illegal stop, detention and/or arrest could not be used to convict a defendant, and that custodial statements taken from her were obtained in violation of her constitutional rights under the Fourth, Sixth and Fourteenth Amendments of the U.S. Constitution and in contravention of several decisions in federal and state cases. The record transmitted to this court shows that the city did not file a response to Senteney's motion to suppress. The trial court issued no written decision or findings of fact. The prosecutor did not request findings of fact. Even had error been raised in this respect, inadequate findings of fact are treated as harmless error where the lack of such findings does not prevent an appellate court from fully reviewing the suppression issues.[2] In the case sub judice, the record of the suppression hearing and the arguments presented below by counsel permit this court to fully review the issues presented at the hearing.
At the commencement of the suppression hearing, defense counsel told the trial court that the motion to suppress applied only to the charge of operating a motor vehicle during a period of suspension, in violation of R.C. 4507.02(D)(2). Officer Vogelpohl was the single witness. According to Officer Vogelpohl, on September 29, 1999, while in uniform and on a marked bike, he, along with two other officers, were at the rear of 1674 Central Parkway investigating a drug complaint. Officer Vogelpohl observed Senteney, alone in a car, drive eastbound on Findlay Street and proceed southbound onto Logan Street, which is at the rear of 1674 Central Parkway. He testified that he had an unobstructed view and saw her turn without using her turn signal. Senteney pulled over to the curb, after which two males approached her car from the vicinity of 1674 Central Parkway and talked with her for a minute or two. Officer Vogelpohl recognized one of the men because a search warrant had been issued for his house two months earlier. The two men then left Senteney and walked back across the street to 1676 Central Parkway.
After waiting a few minutes and when no one returned to Senteney's car, still at the curb, Officer Vogelpohl approached. He asked Senteney who she was and if she had identification. She did not. Officer Vogelpohl testified that he told her that she was stopped because she had not used her signal when she made the turn onto Logan. When he ran a check on the information given to him by Senteney, he discovered that she was driving under suspension. He testified that Senteney told him that she was not the driver, that her friend Work was, that she was waiting for her friend Work, and that she was also going in to see Work, who was one of the two men who had just left her. When asked by the prosecutor why he did not cite Senteney for the failure to signal, but instead cited her for the violation of R.C. 4507.02(D)(2), Officer Vogelpohl responded that he had given her a break, although the ticket permitted citations for as many as five violations.
On cross-examination, Officer Vogelpohl testified that he had asked for a driver's license as he approached the car. When questioned by defense counsel as to whether he had seen "some exchange of some kind," Officer Vogelpohl answered that he had. Officer Vogelpohl testified that he had waited to approach the car to see whether drug transactions might occur and that he had asked Senteney if she was there to buy drugs, which she denied. During final argument, defense counsel stated, "The testimony is that he approached her really to interrogate her about a drug transaction; and yet, another part of his justification for the stop is, he called it, that she failed to signal going around the corner." Defense counsel argued to the trial court that Senteney was not required to signal in the absence of other traffic, that Senteney did absolutely nothing wrong except pull to the side of the road, and that there was no probable cause to interrogate her for anything.
At the conclusion of the hearing, the trial court granted Senteney's motion to suppress, stating in part,
 The Fourth Amendment is very clear, that it protects people, not places. I don't find there was reasonable articulable suspicion for the initial intrusion. The officer may have suspected a number of things. What he did not see was anyone reach inside the window. He saw no transaction or any appearance of a transaction. Defendant has a right to be left alone at that point in time. There was a constitutional violation. I'm going to sustain the motion to suppress.
There is no question that when one approaches an occupied car on foot and then, upon seeing the police, retreats from the scene, there is insufficient activity to justify an investigative stop, even in an area of drug activity.[3] Without more, an officer's asking to see a driver's license in such a situation would be constitutionally barred.
There is also no question that an officer has probable cause to stop a motorist when he observes even de minimis traffic violations, regardless of the officer's underlying subjective intent or motivation for stopping the vehicle.[4] In Dayton v. Erickson, the Ohio Supreme Court stated that an officer clearly had probable cause to stop the defendant based on a minor traffic violation, failure to signal a turn, that had occurred in the officer's presence.[5] On the basis of the valid stop, the officer obtained the defendant's driver's license and ran a computer check.[6]
The check revealed that the defendant had no driving privileges and no valid license.[7] The officer cited the defendant for the failure to signal, as well as for the additional criminal offenses, which the court said he had every right to do given the information obtained during the traffic stop:
 The question whether a traffic stop violates the Fourth Amendment to the United States Constitution requires an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer. * * * [T]he question whether a Fourth Amendment violation occurred * * * depends upon an objective assessment of the officer's actions at the time of the traffic stop, and not upon the officer's actual (subjective) state of mind.[8]
Further, the Ohio Supreme Court concluded,
 [W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question.[9]
We have already noted that other courts have held that a police officer's personal observation of a traffic offense may provide reasonable, articulable suspicion or even probable cause for an investigative stop, and that it no longer matters whether such a stop may be pretextual, or based on a very minor infraction.[10] While Senteney argued that using a turn signal is required only when other traffic will be affected, the fact that Senteney may have a reasonable explanation that might be a defense to a charge for not using her signal does not negate the fact that the officer had reason to believe that the law had been violated.[11] Officer Vogelpohl described the automobile traffic that occurred nightly at that location. He was at the back of the apartment building at 9:30 p.m. that night to observe all traffic when he saw Senteney's arrival.
When considering a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of the witnesses.[12] If the factual findings of the trial court are supported by competent, credible evidence, a reviewing court must give deference to those findings.[13]
"Questions of law, however, may be independently decided by this court without deference to the trial court's decision."[14]
The record reflects that Officer Vogelpohl testified that, with an unobstructed view, he had seen no signal when Senteney turned, and that he had approached her car to inform her of this and asked to see her driver's license. The record is devoid of any indication that the trial court did not believe all or any portion of the officer's testimony. It is clear, contrary to the trial court's remarks, that the officer's uncontradicted testimony provided a basis for finding probable cause that Senteney had committed a traffic violation and, thus, could be stopped without violating any constitutional guarantees. As a result, the trial court erred in granting Senteney's motion to suppress.
Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with law.
 ___________________ Winkler, Judge.
 Sundermann, J., concurs.
Gorman, P.J., dissents.
[1] The city has certified this appeal pursuant to R.C. 2945.67(A), Crim.R. 12(J), App.R. 3 and App.R. 4. We have sua sponte removed this case from the accelerated calendar.
[2] See State v. Alexander (1997), 120 Ohio App.3d 164, 169,697 N.E.2d 255, 258, citing State v. Brewer (1990), 48 Ohio St.3d 50,60, 549 N.E.2d 491, 501.
[3] See State v. Fincher (1991), 76 Ohio App.3d 721, 726, 603 N.E.2d 329,332; see, also, State v. Alexander, supra, at 170,697 N.E.2d at 259.
[4] See Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12,665 N.E.2d 1091, 1097-1098; see, also, State v. Sandlin (Oct. 23, 2000), Warren App. No. CA2000-01-010, unreported; State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, unreported; State v. Turner (Dec. 21, 2000), Franklin App. No. 00AP-248, unreported.
[5] See Dayton v. Erickson, supra, at 11, 665 N.E.2d at 1097.
[6] See id.
[7] See id.
[8] See id. at 6, 665 N.E.2d at 1094.
[9] See id. at 12, 665 N.E.2d at 1097-1098.
[10] See State v. Parks (Sept. 18, 1998), Hamilton App. Nos. C-970814 and C-970815, unreported, citing State v. Nevels (Aug. 1, 1997), Hamilton App. Nos. C-960986 through C-960990, unreported, citing Whren v. U.S.
(1996), 517 U.S. 806, 116 S.Ct. 1769, and Dayton v. Erickson (1996),76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus.
[11] See State v. Turner (Dec. 21, 2000), Franklin App. No. 00AP-248, unreported.
[12] See State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972,981.
[13] See State v. Hill (1998), 127 Ohio App.3d 265, 268, 712 N.E.2d 791,793, citing State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172,1174, and State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54,60; State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141,1143.
[14] State v. Hill, supra, at 268, 712 N.E.2d at 793, citing State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, 1174; see State v.Yett (Mar. 12, 1999), Hamilton App. No. C-980435, unreported.