OPINION
Corey Gene Gay is appealing from the judgment of the trial court finding him guilty of one count of possession of crack cocaine in an amount between ten and twenty-five grams, following his no contest plea to the charge. Prior to his plea, he filed a motion to suppress evidence and, after a hearing, the trial court overruled the motion.
The sole issue on appeal is whether the trial court committed error in its decision overruling the suppression motion. The issue as phrased by appellant is set forth in his sole assignment of error:
 THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PROVING THAT THE OFFICER WHO ISSUED THE DISPATCH HAD A REASONABLE BASIS ON WHICH TO SUSPECT APPELLANT OF A PAROLE VIOLATION.
The facts of the case and the rationale of the trial court in overruling the motion to suppress are succinctly but thoroughly set forth in the court's judgment entry, as follows: JUDGMENT ENTRY This matter came on for a hearing this 3rd day of May, 2001 upon the Motion to Suppress filed by the Defendant on March 14, 2001. At the hearing one witness testified on behalf of the State of Ohio. The defendant elected to present no testimony. From the testimony presented, the Court finds the facts to be as follows:
 On December 8, 2000 Officer Tony Beran and Officer Kelch of the Miamisburg Police Department were on routine patrol. At approximately 5:44 p.m. the officers received information from their dispatcher with the Miamisburg Police Department that an individual by the name of Corey Gay was located at the Chuck-E-Cheese restaurant in Miamisburg. The officers were advised that Mr. Gay had an outstanding warrant from Franklin County, Ohio for a parole violation. The officers were given a description of the defendant. They were advised that the defendant was a black male with braided hair and that he was wearing black pants and a red sweater.
 The officers met Patrolman Duff at the Chuck-E-Cheese restaurant and entered the premises. As they entered the front door and looked into the dining area they observed the defendant who exactly matched the description that they had been given. The officers approached the defendant at his table. The defendant looked up and seemed surprised that the officers were there. The defendant admitted to the officers that he was Corey Gay at which time the officers asked the defendant to move to another section of the restaurant so that they could talk with him. The three officers and the defendant moved approximately 20 to 25 feet away. The defendant's back was to the front door. Before the officers could ask any further questions the defendant turned and ran from the officers.
 The defendant was chased through the doors of the restaurant, through the parking lot of the restaurant, across the street near the restaurant and onto the grassy area of the Holiday Inn Hotel across from the restaurant. Before Officer Beran could apprehend the defendant, the defendant threw an object behind him and Officer Beran tackled the defendant. Officer Kelch retrieved the object thrown by the defendant which was later tested to be crack cocaine.
 No questions were asked of the defendant. The defendant denied that the cocaine was his and refused to make any further statements to the officers after he was advised of his Miranda rights.
 The defendant claims that the apprehension and arrest of the defendant was illegal and that any contraband seized as a result of the illegal arrest must be seized. The defendant also claims that statements made by the defendant should be suppressed however, from the testimony presented this Court finds that there were no incriminating statements made by the defendant which need to be suppressed.
 This Court finds that no Fourth Amendment issue is involved in this matter since the defendant abandoned the cocaine prior to a seizure of the defendant. This Court's finding is supported by California vs. Hodari D. (1991), 499 U.S. 621. In that case the United States Supreme Court indicated that a police officer's conduct and a reasonable person's perception of that conduct are not the only measurements of whether a seizure has occurred. Rather, the suspect's response to the police conduct is highly relevant. Until the police officer's attempt to affect an investigatory stop succeeds, no seizure takes place and, therefore, no Fourth Amendment review of the reasonableness of the officer's decision to intrude on the suspect's privacy should occur. In Hodari, supra, the defendant took flight on seeing a police car. An officer left the car to give chase, running on a parallel street. The defendant, while running, was looking behind him for the officer and did not see the officer chasing him until they were almost face-to-face. When the defendant saw the officer, he threw away a "small rock" and then was tackled by the officer. In that case the United States Supreme Court held that no seizure occurred until after the defendant had abandoned the contraband and therefore no Fourth Amendment review is necessary.
 Moreover, in State vs. Alexander (1997), 120 Ohio App.3d 164, police chased three men who ran at the approach of the officers. The court said, "The mere fact of a suspect running away from an approaching officer in a high drug activity area is insufficient to justify an investigatory stop," but further held that evidence jettisoned during the search was admissible because there was no seizure until the officer struggled the defendant to the ground. Consequently, the evidence thrown away during the chase was admissible.
 In this case, the Court finds that the officers had more then [sic] reasonable, articulable suspicion that criminal activity was afoot when the defendant was approached at the Chuck-E-Cheese restaurant. Specifically, they had information that led the officers to believe that the defendant was wanted on a parole violation warrant. They had received an anonymous tip that the defendant was located at the Chuck-E-Cheese restaurant, at a certain time, that the defendant's name was Corey Gay, that he was a black male with braided hair, and that he wore black pants and a red sweater. Not only did the defendant exactly match the description given to the officers, the defendant acknowledged that his name was Corey Gay when approached by the officers. Based upon the foregoing, the officers were justified in further investigating the matter and discussing the issues with the defendant.
 In addition to that fact, this Court further finds that the defendant abandoned the contraband before he was seized by the officers in the grassy area in front of the Holiday Inn Hotel. As a result of the abandonment, the defendant can not now be heard to argue Fourth Amendment issues.
 The Motion is OVERRULED and the same is hereby DENIED. The contraband confiscated by the officers will be permitted to be utilized at trial.
Docket 21.
The appellant bases his argument on the case of Maumee v. Weisner
(1999), 87 Ohio St.3d 295, which held that where an officer making an investigative stop relies solely upon dispatch, the State must demonstrate at a suppression hearing the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. The appellant bases his argument on the contention when the officers asked Corey if they could talk to him, he said "sure," after which the officers led him to an area in the restaurant outside the hearing of other patrons, approximately twenty to twenty-five feet away. Since we find this not to be a true investigative "stop" but rather a consensual encounter between the appellant and the police, and therefore no violation of the appellant's Fourth Amendment rights, we will affirm.
We believe this case is governed by the ruling of the United States Supreme Court in United States v. Mendenhall (1980), 446 U.S. 544,64 L.Ed.2d 497, 100 S.Ct. 1870, reh den (U.S.) 65 L.Ed.2d 1138,100 S.Ct. 3051. In that case, two federal agents approached a woman who was walking through the airport concourse after arriving on an airplane from Los Angeles. They believed she fit the "drug curio" profile, and asked to see her identification as well as her airline ticket. After identifying the woman from her papers, one agent identified himself specifically as a federal narcotics agent and asked Ms. Mendenhall if she would accompany him to the airport office of the Drug Enforcement Administration (DEA). She did, although the record does not indicate a verbal response to the request. The office was located up one flight of stairs about fifty feet from where Ms. Mendenhall had first been approached. The Supreme Court found that this was an entirely consensual encounter and, therefore, was no violation of Ms. Mendenhall's Fourth Amendment rights. We can find no seizure of the appellant here before he abruptly ran out the restaurant away from the officers and threw the crack cocaine he was carrying on the ground during the flight. The facts of the case before us indicate a consensual encounter even more than those before the Supreme Court in Mendenhall. Here, the appellant did verbally respond to the question by saying "sure" and the officers did not have to lead him to an office but only to a spot in the restaurant only twenty to twenty-five feet away from where the appellant had been sitting.
We find, as did the trial court, that the seizure of the appellant occurred when he was tackled in flight by one of the officers and, since the cocaine was found apparently abandoned by the appellant before this seizure, the evidence was admissible. State v. Alexander (1997),120 Ohio App.3d 164.
Since there was no "stop" of the appellant, but merely a consensual encounter before the cocaine was abandoned by the appellant, appellant's argument on the issue of whether the dispatcher had reasonable grounds to believe the information he gave to the police officers had sufficient indicia of reliability to justify a stop, is irrelevant.
The sole assignment of error is overruled, and the judgment is affirmed.
WOLFF, P.J. and BROGAN, J., concur.