OPINION
{¶ 1} This appeal is taken by the State from a judgmentgranting Defendant's motion to suppress evidence.
 {¶ 2} Defendant was indicted on one count of possession ofcrack cocaine in violation of R.C. 2925.11(A). Defendant filed amotion to suppress evidence, arguing that police lacked thereasonable suspicion of criminal activity necessary to justifythe investigatory stop and detention that yielded the evidence.The trial court agreed that the investigatory stop and detentionof Defendant was not based upon sufficient reasonable suspicionof criminal activity and therefore violated Defendant's FourthAmendment rights. The trial court granted Defendant's motion tosuppress the evidence seized by police as a result of theirillegal stop.
 {¶ 3} The State timely appealed to this court, pursuant toR.C. 2945.67(A) and Crim.R. 12(K).
 ASSIGNMENT OF ERROR {¶ 4} "The trial court erred in sustaining defendant's motionto suppress."
 {¶ 5} When considering a motion to suppress, the trial court assumes the role of the trier of facts and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v. Retherford (1994),93 Ohio App.3d 586. Upon appellate review of a decision on a motion to suppress, the court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Id. Accepting those facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
 {¶ 6} The facts found by the trial court in this case are asfollows:
 {¶ 7} "On August 27, 2003 at approximately midnight, OfficerChad Jones of the Dayton Police Department and his partner,Officer Troup, of the Dayton Police Department were on foot inplain clothes in the area of 200 Springfield Street, Dayton,Montgomery County, Ohio. The officers were dressed in jeans andT-shirts but were wearing their bullet-proof vests and dutybelts, including guns. The neighborhood near 200 SpringfieldStreet is known to Officer Jones as a high crime and prostitutionarea. A home next to where the Defendant was seen standing wasnuisance abated for drug activity the night before the officer'sencounter with Defendant.
 {¶ 8} "Defendant was seen by the officers standing in a vacantlot between two homes approximately fifty feet from the sidewalkholding something up to his mouth. Officer Jones testified thatthe Defendant appeared to be eating something. There was nosuggestion that Defendant was engaged in any criminal behavior.In fact, Officer Jones testified that there was nothing thatDefendant was doing that led the officers to believe that he wasengaged in or about to be engaged in criminal activity. Theofficers asked Defendant if he had a light. The Defendant stated`no.' The Defendant put his hands in his pockets and OfficerJones believed that Defendant was `going to run.' Officer Jonesstated that he intended to talk with the Defendant because hefelt it was suspicious that Defendant was in a vacant lot next toa crack house. There was no evidence or testimony that anyoneelse was in the area or outside that evening. The area was litalthough the space between the two houses where Defendant wasstanding was shadowed. The Defendant had not been told by thepolice to stop nor was he asked what he was doing nor was heasked if the officers could talk with him. Defendant simply threwdown what he was eating and ran. The officers began chasing himthrough various streets and alleys in the vicinity of 200Springfield Street.
 {¶ 9} "Officer Jones stated that when Defendant was running hesaw Defendant throw something down. An object was later retrievedwhich appeared to a crack pipe. The officers repeatedlyidentified themselves as Dayton Police Officers and told theDefendant to stop. He did not comply with that order andcontinued to run. Another uniformed officer, Officer EricSteckel, eventually located the Defendant, stopped him, tackledhim and arrested him for resisting arrest and failure to obey alawful order. Defendant was not questioned by any of theofficers. A crack pipe was found laying under the Defendant whenhe was picked up off the ground following his arrest and othercontraband was found on his person." (November 14, 2003 Decision,Order and Entry at pp. 1-2.)
 {¶ 10} Analyzing these facts and circumstances, the trialcourt reasoned that, absent any indication that Defendant wasinvolved in any criminal activity when the officers approachedhim, his flight was insufficient in and of itself to justify theseizure of his person that occurred when the officers then gavechase. Further, because that seizure was unreasonable, thearticles of contraband the officers recovered from Defendant whenhe was subsequently brought down and that he discarded during thechase must be suppressed.
 {¶ 11} Law enforcement officers may stop and briefly detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot; that is, more than an unparticularized suspicion or mere hunch but less than the level of suspicion required for probable cause.Terry v. Ohio, (1968), 392 U.S. 1; State v. White (Jan. 18, 2002), Montgomery App. No. 18731. In order to conduct an investigatory stop, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion.Terry v. Ohio, supra; State v. White, supra.
 {¶ 12} The propriety of an investigative stop must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Andrews (1991), 57 Ohio St.3d 86. Accordingly, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. Id.
 {¶ 13} We agree with that portion of the trial court's decision which concludes that before Defendant ran from police the officers had observed no conduct giving rise to a reasonable suspicion of criminal activity that would justify a Terry stop. Defendant's mere presence in a high crime area, standing alone, is not sufficient to support a reasonable suspicion of criminal activity. It is, however, a relevant consideration in determining whether the totality of the facts and circumstances are sufficiently suspicious to warrant further investigation.Illinois v. Wardlow (2000), 528 U.S. 119, 120 S.Ct. 673; Adamsv. Williams (1972), 407 U.S. 143, 92 S.Ct. 1921.
 {¶ 14} When Defendant ran from Officers Jones and Troup as they approached him, that aroused the officers' suspicions. Evasive behavior is another pertinent factor in determining reasonable suspicion, and headlong flight is the consummate act of evasion. Wardlow, supra. While flight is not necessarily indicative of ongoing criminal activity, Terry recognized that officers may detain individuals to resolve ambiguities in their conduct. Id.
 {¶ 15} In the course of running from police, Defendant threw down an object, which further heightened the officers' suspicions of criminal activity. The totality of these facts and circumstances, when viewed through the eyes of the police officers on the scene, was sufficient to give rise to reasonable suspicion of criminal activity and to justify stopping and briefly detaining Defendant for further investigation. Terry v.Ohio, supra. The trial court erred in holding otherwise.
 {¶ 16} Defendant did not heed the officers' commands to halt or stop even after they identified themselves as Dayton police officers. Instead, Defendant continued to run until he was tackled and brought to the ground by other officers. Until a police officer's attempt to effect an investigatory stop succeeds, no seizure has taken place and no Fourth Amendment review of the reasonableness of the officer's decision to intrude on the suspect's privacy is appropriate. California v. HodariD. (1991), 499 U.S. 621, 111 S.Ct. 1547. Absent submission to a show of authority by police, there is no "seizure" and no Fourth Amendment issue. Id. A command to Defendant to "halt," such as was repeatedly given by police in this case, when not complied with is not a Fourth Amendment seizure, Id, and flight is not submission.
 {¶ 17} Defendant was not seized and no Fourth Amendment issue arose until he was tackled by police and brought to the ground.State v. Alexander (1997), 120 Ohio App.3d 164; State v. Gay
(April 19, 2002), Montgomery App. No. 18970. By that time, Officers Jones and Troup not only had sufficient reasonable suspicion of criminal activity to warrant a Terry investigative stop, they also had probable cause to arrest Defendant for failure to obey an order or signal from a police officer.
 {¶ 18} The crack pipe discovered by police underneath Defendant where he lay on the ground provided additional probable cause for his arrest on drug paraphernalia charges. The search of Defendant's person incident to his lawful arrest, which produced the crack cocaine giving rise to these charges, was constitutionally reasonable. Chimel v. California (1969),395 U.S. 752, 89 S.Ct. 2034. The trial court erred in suppressing that evidence because there was no violation of Defendant's Fourth Amendment rights in this case.
{¶ 19} The State's sole assignment of error is well taken andwill be sustained. The judgment of the trial court will bereversed, and this matter will be remanded back to the trialcourt for further proceedings consistent with this opinion.
 Brogan and Wolff, JJ., concur.