Judgment reversed<br/>and cause remanded.

DOAN, P.J., and HILDEBRANDT, J., concur.

**The STATE of Ohio, Appellant,**

**v.**

**TAYLOR, Appellee.**

[Cite as *State v. Taylor*, 159 Ohio App.3d 629, 2005-Ohio-804.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20665.

Decided Feb. 25, 2005.

630

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram, Assistant Prosecuting Attorney, for appellant.

Janet R. Sorrell, Assistant Public Defender, for appellee.

Chad D. Cooper, urging reversal for amicus curiae, Five Rivers Metro Parks.

Fain, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from an order suppressing evidence.

{¶ 2} The state and Five Rivers Metro Parks, filing an amicus curiae brief, contend that the trial court erred in finding that the Five Rivers Metro Parks ranger in this case did not have territorial jurisdiction to stop the vehicle in which defendant-appellee Sherri Taylor was a passenger. We decline to address this issue because both the state and Taylor agree, and the trial court also found, that the issue of the ranger's authority to make a stop outside his territorial jurisdiction is irrelevant. Even if the ranger did exceed his statutory authority, that action did not constitute a violation of Taylor's constitutional rights and would not, therefore, justify the remedy of the exclusion of evidence, which is available only when evidence is obtained in violation of constitutional rights.

{¶ 3} The state contends that the trial court erred in granting Taylor's motion to suppress because the ranger had a reasonable suspicion of criminal activity based on specific and articulable facts justifying the stop of the vehicle in which Taylor was a passenger. We conclude that the totality of the surrounding circumstances, when viewed through the eyes of the ranger, gave rise to a reasonable suspicion of criminal activity justifying the stop.

{¶ 4} Accordingly, the order of the trial court suppressing evidence is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 5} In April 2004, Sherri R. Taylor was indicted for possession of cocaine in violation of R.C. 2925.11(A). Taylor filed a motion to dismiss or suppress. The trial court held a hearing and heard the testimony of the state's one witness, Five Rivers Metro Parks Ranger Bradley Pearson. Ranger Pearson testified that around 3:00 a.m. on March 26, 2004, he observed a black Chevy parked on Webster Street, approximately 50 feet from the levee on the Great Miami River in the city of Dayton, with no headlights on but with the engine running. Ranger Pearson testified that when he approached the Chevy in his cruiser, he observed three females beginning to move their arms around rapidly. He testified that the driver of the vehicle then put the car in gear and began to "drive away at a high rate of speed." Ranger Pearson testified that he turned his cruiser around, got behind the Chevy, and initiated a traffic stop. He testified that he stopped the Chevy based upon its being illegally parked in the roadway and the apparent flight when he approached the vehicle.

{¶ 6} Ranger Pearson testified that after calling for backup, he made contact with the occupants of the vehicle and identified the driver as Maria Horner, the front passenger as Sherri Taylor, and the rear passenger as Jessica Black. Ranger Pearson testified that when officers from the Dayton Police Department arrived to assist him, he went back to his cruiser and entered the information that the occupants had given him. He testified that he discovered that the vehicle was registered to Taylor and that Horner had an active warrant out in Montgomery County for a probation violation. Ranger Pearson testified that when he went back to the Chevy and asked Horner to get out, she said, "Oh shit," and immediately put the car in gear and attempted to drive away. Ranger Pearson testified that a police officer on the scene reached in, grabbed the transmission shifter, and put the car in park. He testified that Horner was screaming and attempted to get away by climbing over Taylor. Ranger Pearson testified that Horner was eventually arrested and placed in a cruiser.

{¶ 7} Ranger Pearson testified that he noticed on the floorboard between the driver's seat and the door an empty cigarette pack containing a glass tube with some foil and black and white marks on it. He testified that after Taylor and Black got out of the car at his request, he noticed another crack pipe sitting in a shoe on the floorboard behind the driver's seat. Ranger Pearson testified that he asked Taylor about the two crack pipes and she said she was unaware that they were in the vehicle. He testified that he asked Taylor whether he would discover anything else in the vehicle and she said, "No." Ranger Pearson testified that he asked Taylor whether she would mind if he looked for any other contraband that might be in the vehicle and she said, "Go ahead." Pearson testified that after searching the vehicle, he discovered cocaine in the glove compartment. Taylor was then arrested.

{¶ 8} An issue was raised at the hearing whether Ranger Pearson had territorial jurisdiction to stop the vehicle in which Taylor was a passenger. Ranger Pearson testified that as a Five Rivers Metro Parks ("FRMP") ranger, he is trained in jurisdiction. He testified that Webster Street is a dedicated street in the city of Dayton but that pursuant to an agreement between the Miami Conservancy District ("MCD") and the FRMP, FRMP rangers are allowed to police property owned by the Conservancy District and property adjacent to it. The agreement between MCD and FRMP was submitted to the trial court.

{¶ 9} The trial court concluded that Ranger Pearson did not have jurisdiction to stop the vehicle in which Taylor was a passenger. The trial court found that pursuant to R.C. 6101.75, the MCD could designate FRMP rangers to have police powers within and adjacent to land under MCD supervision but that the state failed to present evidence showing that the location where Ranger Pearson

stopped the vehicle was within or adjacent to a park district. However, the trial court concluded that although Ranger Pearson was outside his jurisdiction, the exclusionary rule did not apply, because a stop effected outside an officer's territorial jurisdiction is only a statutory violation, not a constitutional violation. The trial court then addressed the remaining issue—the legality of the stop—and found that the evidence did not demonstrate a reasonable and articulable suspicion justifying a stop of the vehicle in which Taylor was a passenger. The trial court granted Taylor's motion to suppress. From the trial court's order suppressing evidence, the state appeals.

{¶ 10} In addition to the briefs filed by the state and by Taylor, the FRMP filed an amicus curiae brief, joining the state in its contention that the trial court erred in finding that Ranger Pearson made the stop outside his territorial jurisdiction.

## II

{¶ 11} The state's sole assignment of error is as follows:

{¶ 12} "The trial court erred in granting defendant's motion to suppress."

{¶ 13} The state and the FRMP contend that the trial court erred in holding that Ranger Pearson did not have jurisdiction to stop the vehicle in which Taylor was a passenger. The state and the FRMP contend that Ranger Pearson had authority to exercise police powers in areas adjacent to lands under the jurisdiction and control of the FRMP and that the area in which he conducted the stop in this case was under the FRMP's jurisdiction and control pursuant to R.C. 1545.14 and the agreement between the FRMP and the MCD.

{¶ 14} The state argues, Taylor concedes, and the trial court held, that the issue of Ranger Pearson's authority to make a stop outside his jurisdiction is immaterial because suppression is the remedy for constitutional violations, not statutory violations. We agree. "[A] stop or arrest in violation of the territorial limits imposed by statute upon a police officer's arrest powers, is not a constitutional violation, and will not, therefore, support the extraordinary remedy of exclusion of evidence obtained as a result of an unlawful stop or arrest." *State v. Pierce,* Montgomery App. No. 19926, 2003-Ohio-7244, 2004 WL 68754, at ¶ 9. Because both parties agree that the issue of Ranger Pearson's authority to make a stop outside his jurisdiction is immaterial, and the trial court so found, we will not address this issue.

{¶ 15} The state contends that the trial court erred in granting Taylor's motion to suppress, because Ranger Pearson had a reasonable suspicion of criminal activity based on specific and articulable facts that justified the stop.

{¶ 16} A trial court undertakes the position of the trier of fact in a motion to suppress evidence. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498. Therefore, the trial court is in the best position to decide questions of fact and to assess witness credibility. Id. In reviewing a motion to suppress, this court will accept the factual findings of a trial court if the findings are supported by competent and credible evidence. Id. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.

{¶ 17} "In order to conduct an investigative stop of a vehicle, the police officer must 'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.' *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889. The Ohio Supreme Court has found that '[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. These circumstances must be considered 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' *State v. Andrews* (1991), 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271. For this reason, the court must take into consideration the officer's experience and training and understand how the situation would have been viewed by the officer on the street. Id. at 88, 565 N.E.2d 1271." *State v. White*, Montgomery App. No. 18731, 2002-Ohio-262, 2002 WL 63294, at *2.

{¶ 18} We have previously stated that a "[d]efendant's mere presence in a high crime area, standing alone, is not sufficient to support a reasonable suspicion of criminal activity. It is, however, a relevant consideration in determining whether the totality of the facts and circumstances are sufficiently suspicious to warrant further investigation. *Illinois v. Wardlow* (2000), 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570; *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612." *State v. Stafford*, Montgomery App. No. 20230, 2004-Ohio-2200, 2004 WL 917987, at ¶ 13. In addition, "[e]vasive behavior is another pertinent factor in determining reasonable suspicion, and headlong flight is the consummate act of evasion. *Wardlow, supra.*" Id. at ¶ 14.

{¶ 19} Ranger Pearson testified that it was around 3:00 a.m. when he observed the black Chevy parked on Webster Street with no headlights on and with the engine running. He testified that he patrols the area every night and that in his experience, it was an area known for drug activity and illicit sexual activity. Ranger Pearson testified that he had personally made arrests in that area for those types of crimes. Ranger Pearson testified that when he approached the Chevy in his cruiser, he observed three females beginning to move their arms around rapidly in what appeared to be an attempt to hide items in the vehicle.

He testified that the driver of the vehicle then put the car in gear and began to "drive away at a high rate of speed." Ranger Pearson testified that he stopped the Chevy based upon its being illegally parked in the roadway, the rapid movement of the passengers' arms in what appeared to be an attempt to hide items in the vehicle, and the apparent flight upon his presence.

{¶ 20} The trial court in this case concluded that Ranger Pearson's testimony regarding the driver's attempt to leave the scene at a "high rate of speed" did not add up to evidence of flight, one of the relevant considerations in the totality of the circumstances. Specifically, the trial court stated that "[a] vehicle, starting from a standstill, never achievers [sic] a 'high rate of speed' if brought to a stop in 100 to 200 feet." However, we conclude that one does not have to reach a high speed for one's departure from a place where one expects to be arrested or detained to be considered flight. A vehicle's high acceleration upon the approach of an officer, even if the vehicle comes to a stop shortly thereafter, could still be interpreted as flight. In this case, Ranger Pearson testified when he approached the Chevy in his cruiser, "the driver immediately put the car into gear and hit the accelerator to where the engine was revving as the vehicle was leaving at what I would consider a high rate of speed." Although the speed of a suspect's departure from approaching police can be a factor to consider in evaluating flight and its significance in evaluating reasonable, articulable suspicion based on the totality of circumstances, speed is not essential to the concept of flight. "Flight" is defined in Black's Law Dictionary (4th Ed.Rev. 1968) 768, as "The evading of the course of justice by voluntarily withdrawing one's self in order to avoid arrest or detention, or the institution or continuance of criminal proceedings, regardless of whether one leaves jurisdiction." *Commonwealth v. Myers* (1938), 131 Pa.Super. 258, 200 A. 143, 146. Because the significance of flight lies in the intent of the actor to avoid arrest or detention, the speed of the withdrawal from the scene can be a factor in divining the actor's intent. In many circumstances, a high speed would suggest an intent to avoid arrest or detention; in some circumstances, including, for example, the presence of a large crowd at the scene, a slower withdrawal from the area might be more consistent with an intent to avoid arrest or detention by not drawing attention to oneself. In any event, flight does not necessarily require, as the trial court seemed to believe, a high rate of speed.

{¶ 21} When considering the apparent flight of the vehicle upon Ranger Pearson's approach, together with the totality of the remaining circumstances, including the fact that the stop was made in the middle of the night in an area known for drug activity and illicit sexual activity, based upon the Ranger Pearson's experience of personally making arrests in that area for those offenses, and the rapid movement of the passengers' arms, in what appeared to be an

attempt to hide items in the vehicle, we conclude that the totality of the surrounding circumstances, when viewed through the eyes of Ranger Pearson, gave rise to a reasonable suspicion of criminal activity justifying the stop of the vehicle in which Taylor was a passenger.

{¶ 22} The state's sole assignment of error is sustained.

## III

{¶ 23} The state's sole assignment of error having been sustained, the order of the trial court suppressing evidence is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN, P.J., and WOLFF, J., concur.