[Cite as *State v. Croff*, 2017-Ohio-8629.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**


STATE OF OHIO,                          :          **O P I N I O N**

      Plaintiff-Appellee,          :

      - vs -                          :          **CASE NO. 2017-T-0005**

VINCENT ARTEZ CROFF,          :

      Defendant-Appellant.          :


Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CR 00105.

Judgment: Affirmed.


*Dennis Watkins*, Trumbull County Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*David L. Engler*, Engler Law Firm, 181 Elm Road, N.E., Warren, OH 44483 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.


{¶1} Appellant, Vincent Artez Croff, appeals his conviction for possession of cocaine in violation of R.C. 2925.11, a fifth-degree felony with a forfeiture specification. We affirm.

{¶2} Croff raises four assigned errors:

{¶3} "[1.] The court erred in dismissing appellant's motion to dismiss for speedy trial violation.

{¶4} "[2.] The court erred in overruling appellant's motion to suppress the statements, flight of the appellant and discovery of contraband that were all discovered as a result of an unconstitutional search by the arresting officers.

{¶5} "[3.] The court erred in finding that Officer Edwards' K-9 use reports were not clearly probative of Officer Edwards' character for truthfulness or untruthfulness.

{¶6} "[4.] The guilty conviction entered by the court is against the weight of the evidence."

{¶7} Croff first argues the trial court erred in failing to grant his motion to dismiss the charges based on a speedy trial violation. He claims the delay between the second mistrial and the commencement of his third trial was unreasonable. We disagree.

{¶8} A criminal defendant is guaranteed the right to a speedy trial by the Sixth and Fourteenth Amendments to the United States Constitution, and the same right is conferred by Section 10, Article I of the Ohio Constitution. *State v. O'Brien,* 34 Ohio St.3d 7, 8, 516 N.E.2d 218 (1987).

{¶9} Croff was convicted following a third jury trial. His first two trials ended in mistrials resulting from hung juries.

{¶10} Ohio's speedy trial statute, R.C. 2945.71, only applies to the initial adjudication following arrest, not to subsequent trials after a jury fails to reach a verdict. *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶14, citing *State v. Fanning*, 1 Ohio St.3d 19, 21, 437 N.E.2d 583 (1982). Instead of R.C. 2945.71, the

2

standard to apply is reasonableness under federal and state constitutions. *Fanning* at 21; *State v. Iapaola*, 11th Dist. Ashtabula No. 91-A-1649, 1992 WL 192134, *2 (June 16, 1992). We assess the reasonableness of the delay pursuant to *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972). We apply the de novo standard of review to questions of law upon reviewing speedy trial issues. *State v. Downing,* 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶36; *State v. Wilson*, 11th Dist. Trumbull No. 2015-T-0082, 2017-Ohio-502, ¶39.

{¶11} The Ohio Supreme Court in *Hull* spelled out the required analysis,

{¶12} "In *Barker* \* \* \*, the court identified four factors to be assessed in determining whether an accused had been constitutionally denied a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant. Id. at 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. Even though no single factor controlled, the court in *Barker* stated that the length of the delay is particularly important:

{¶13} "'The length of the delay is to some extent a triggering mechanism. Until there is some delay *which is presumptively prejudicial,* there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.' (Emphasis added and footnote omitted.) Id. at 530–531, 92 S.Ct. 2182, 33 L.Ed.2d 101.

{¶14} "In *State v. O'Brien* (1987), 34 Ohio St.3d 7, 516 N.E.2d 218, we considered and applied the *Barker v. Wingo* analysis to a case involving the waiver of speedy trial for a first-degree misdemeanor charge of driving under the influence of

alcohol, and we concluded that a 138-day delay could not be 'regard[ed] [as] "presumptively prejudicial" under [the] circumstances.' Id. at 10, 516 N.E.2d 218. Further, in *State v. Madden,* 10th Dist. No. 04AP–1228, 2005-Ohio-4281, 2005 WL 1983376, and *State v. Webb,* 4th Dist. No. 01CA32, 2002-Ohio-3552, 2002 WL 1565686, courts have concluded that delays of five months and six months are not presumptively prejudicial for the prosecution of a first-degree misdemeanor charge involving driving under the influence." *State v. Hull,* supra, at ¶22-24.

{¶15} "A delay becomes presumptively prejudicial as it approaches one year in length. *Doggett v. United States,* 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶90, *reconsideration denied,* 144 Ohio St.3d 1480, 2016-Ohio-467, 45 N.E.3d 246.

{¶16} Here, the trial court declared a second mistrial July 29, 2016. Croff's second jury trial was conducted almost immediately after the first mistrial.

{¶17} Accordingly, Croff's third trial was set October 24, 2016, but was continued due to the unavailability of the state's key witness. Croff's third trial commenced November 8, 2016, 102 days after the second mistrial, or approximately three and a half months later. As noted, the Ohio Supreme Court referenced, with approval, the holdings in *Madden* and *Webb*, supra, which concluded that five- and six-month delays are not presumptively prejudicial for prosecuting first-degree misdemeanors. Croff was facing a fifth-degree drug possession offense. Thus, consistent with *Hull*, *Madden*, and *Webb*, the less than three and one-half month delay is not presumptively prejudicial for the prosecution of Croff's fifth-degree drug possession offense.

**{¶18}** Because the delay here was not presumptively prejudicial, we do not undertake the rest of the *Barker* analysis, and as such, find the delay in Croff's retrial constitutionally reasonable. *State v. Hull*, supra. Croff's first assigned error lacks merit.

**{¶19}** Croff's second argument asserts the trial court erred in failing to suppress his statements, flight after his stop, and discovery of narcotics because each followed his unconstitutional search and seizure.

**{¶20}** Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. We must accept the trial court's findings of fact if they are supported by competent, credible evidence. Because the trial court acts as the trier of fact in a motion to suppress evidence, it is in the best position to assess witness credibility. *State v. Taylor,* 159 Ohio App.3d 629, 2005-Ohio-804, 824 N.E.2d 1057, ¶16 (2d Dist.) Upon accepting these facts as true, we independently determine whether the facts satisfy the applicable legal standard. *State v. Polk,* 150 Ohio St.3d 29, 2017-Ohio-2735, 78 N.E.3d 834, ¶35.

**{¶21}** Croff's motion to suppress contains two main arguments. First he argues the initial traffic stop was pretextual and unlawful since the mobile video recorder footage demonstrates that he stopped at the stop sign, and as such, the patrolman lacked a reasonable basis to initiate the traffic stop. He also claims that the patrolman impermissibly extended the stop to conduct a dog sniff because the time it took the patrolmen to initiate the dog sniff was sufficient to issue the traffic citation and because the patrolman based his decision to conduct the dog sniff, in part, on Croff's declining to consent to a search.

5

{¶22} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968); *Polk* at ¶12.

{¶23} "'The touchstone of the Fourth Amendment is reasonableness.' *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). '"[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case."' (Brackets sic.) *South Dakota v. Opperman,* 428 U.S. 364, 375, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), quoting *Cooper v. California,* 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). 'Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.' *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)." *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶14.

{¶24} "The exclusionary rule bars the use of evidence secured by an unconstitutional search and seizure." (Citation omitted.) *Id.* at ¶34. A traffic stop by law enforcement is a seizure that must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769 (1996).

{¶25} Patrolman Michael Edwards of the Warren City Police Department and Vincent Croff testified at the suppression hearing.

{¶26} On February 11, 2015, Patrolman Edwards was in a high narcotics trafficking and high violent crime area in Warren, Ohio when he saw Croff "roll through" a stop sign. Although Croff's taillights were activated, Edwards stated he failed to come to a complete stop.

**{¶27}** Edwards was partnered with Czar, a canine. Upon pulling over Croff for the traffic violation, Croff handed Edwards his license and advised that the vehicle belonged to his girlfriend. Edwards called in his driver's license number to dispatch and began questioning Croff. Edwards testified that Croff was acting nervously which included heavy breathing and shaking hands. At one point Croff stopped looking at Edwards as well. None of these behaviors are visible on the mobile video recorder on Edwards' car, but Edwards said these behaviors are not "normal behaviors" encountered during prior traffic stops.

**{¶28}** Edwards explained that he suspected Croff had a gun in the vehicle, so he asked to search the vehicle. When Croff refused consent to search, Edwards said this raised red flags because "individuals who want to hide things" tend to act in that manner. Because of Croff's nervous behavior and his admission that he was on parole, Edwards asked him to exit his vehicle with the intent to conduct a dog sniff, which detects drugs, not weapons. Edwards did not have his ticket book with him, and had he decided to write Croff a ticket, it was still in his car. At about the same time Croff is told to exit his vehicle, another officer arrived at the scene. Edwards began to conduct a pat down search for officer safety to look for weapons before conducting the dog sniff when Croff ran away. Officers ultimately found a baggie of crack cocaine on the ground on top of the snow where Croff had fled.

**{¶29}** Edwards agreed that although he suspected Croff had a gun, his dog is only trained to alert to the presence of drugs, not weapons. Edwards did not testify that he believed Croff had drugs.

**{¶30}** Croff testified that he was headed to Taco Bell when he saw Patrolman Edwards for the first time. The two were headed in different directions on the same road and then turned onto different streets. Thereafter, Croff recalls Edwards appeared behind him suddenly. Croff believed that Edwards saw him previously and, under objection, said that he felt Edwards identified him as someone he wanted to follow.

**{¶31}** Croff testified that he came to a complete stop at the stop sign in question. He explained he was "sitting there before I even hit my blinker and turned." Croff said he sat there for "at least a couple of seconds" before activating his turn signal. Croff said he "guesses" his breathing could have been heavy because he was smoking a cigar at the time, but he denied having a hard time catching his breath.

**{¶32}** The video from Edwards' vehicle shows that Croff's brake lights were illuminated before he activated his left turn signal, but it is not conclusive as to whether he stopped.

**{¶33}** Instead of proceeding to write a ticket or a warning, Edwards asks if Croff has any weapons in the car. Croff said no and that he was on parole. Edwards then asked Croff to consent to his car being searched, and Croff responded that it was a traffic stop. Edwards again asked Croff for consent to search the car and told him there is a "whole lot of gun play happening late at night." In the meantime, dispatch can be heard via Edwards' radio confirming Croff's license and address. Croff then declined the vehicle search, and Edwards explained he was going to have the dog sniff the vehicle, and if the dog alerts, then Edwards is going to search the vehicle. Edwards told Croff to get out of the vehicle. Edwards began patting Croff down and told him he was making sure he had no weapons, when Croff fled on foot.

**{¶34}** The trial court did not issue a judgment entry setting forth its decision denying the motion to suppress or findings of fact in support. It likewise did not memorialize its decision or findings at the suppression hearing. However, it is clear that the trial court denied the motion to suppress because the disputed evidence was introduced at trial and formed the basis for the offense. Further, there is a presumption that a trial court denied pending motions upon judgment of conviction. *State v. Gomez*, 9th Dist. Lorain No. 13CA010389, 2014-Ohio-3535, ¶7. Although the trial court did not issue a written decision, it does reference its decision during the hearing on the state's motion in limine, stating:

**{¶35}** "The arguments were made at the suppression hearing, evidence was presented. The Court was able to view the area of the stop and the Court found that the area where the stop sign was that it was a proper stop with probable cause."

Here, the record is sufficient to facilitate appellate review. *State v. McNamara*, 124 Ohio App.3d 706, 714-15, 707 N.E.2d 539, 544 (4th Dist.1997), citing *State v. Brown*, 64 Ohio St.3d 476, 597 N.E.2d 97, syllabus (1992).

**{¶36}** If a police officer's decision to stop a motorist for a traffic violation is prompted by probable cause that a traffic violation has occurred, considering all the circumstances, then the stop is constitutionally valid even if the officer had an ulterior motive for making the stop. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶22.

**{¶37}** The trial court, based on its motion in limine ruling, believed Edwards' testimony over that of Croff's on the issue of whether he had probable cause to stop Croff's car. This determination is supported by competent, credible evidence.

9

**{¶38}** We also find sufficient evidence to review the second issue in Croff's suppression motion regarding Edwards' alleged prolonging of the stop to conduct a dog sniff.

**{¶39}** In *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834 (2005), the United States Supreme Court held that an officer's conducting a dog sniff during the issuance of a citation by another officer is permissible when the traffic stop is not extended beyond the necessary time to address the traffic violation and because a canine sniff does not constitute a Fourth Amendment search because it does not "'compromise any legitimate interest in privacy * * *.'" *Id.* at ¶408.

**{¶40}** However, in *Rodriguez v. U.S.*, 135 S.Ct. 1609 (2015), the Supreme Court found that a canine sniff occurring seven minutes after a citation is issued is not lawful since it constitutes an unlawful seizure beyond the time required for the traffic violation since a sniff is a measure "aimed at 'detecting evidence of ordinary criminal wrongdoing[,]'" not an ordinary inquiry incident to the traffic stop. (Citation omitted.) *Id.* at 1615. *Rodriguez* held: "Absent reasonable suspicion, police extension of a traffic stop in order to conduct a dog sniff violates the Constitution's shield against unreasonable seizures." *Id.* at *syllabus*. "The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, * * * but whether conducting the sniff 'prolongs' * * * 'the stop.'" (Citation omitted.) *Id.* at 1616.

**{¶41}** We need not reach the issue of whether a sniff prolonged the stop in this case because Edwards never conducted it. Instead, he asked Croff to exit his vehicle and began a pat down search, when Croff ran away.

10

{¶42} Regardless of the officer's subjective reason for removing Croff from the car, the removal is permissive under *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). *Mimms* addressed the constitutionality of an officer's order to get out of the car to a driver during a lawful traffic stop. It found the intrusion on the driver was minimal and held that the inconvenience of getting out of one's car "cannot prevail when balanced against legitimate concerns for the officer's safety." *Mimms* at 111. Thus, it found that an officer's order to get out of the car after a lawful stop is reasonable and permissible under the Fourth Amendment. *Id.*

{¶43} Contrary to Croff's assertions, the officer's subjective reason for removing him from the vehicle, i.e., to conduct a dog sniff, is not determinative because his removal is constitutionally permissible. *See Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996) (holding that the constitutionality of a traffic stop requires an objective assessment of officer's actions regardless of subjective intent.) Furthermore, Croff does not challenge the constitutionality of the pat down. Thus, we do not address it.

{¶44} We find no constitutional violation warranting suppression, and Croff's second assigned error lacks merit.

{¶45} Croff's third assignment of error asserts the trial court erred in granting the state's motion in limine excluding approximately 100 pages of Edwards' canine use reports from use at trial. The state's motion asserts defense counsel provided it with a packet containing Edwards' canine use reports at the conclusion of the first day of his third trial. The state filed its motion in limine the next morning. In support, the state

11

explains that many of Edwards' canine reports concern facts occurring after Croff's offense and as such, were either not relevant or that the relevant value is outweighed by its prejudicial effect. Evid.R. 403.

{¶46} Croff argues these reports show Edwards' character for truthfulness and his tendency to use his dog to search a disproportionate number of African American males and that the same were admissible under Evid.R. 608. Croff further alleges that the inclusion of the reports does not risk unfair prejudice.

{¶47} We review decisions involving the admissibility of evidence, including those deciding motions in limine, for an abuse of discretion. *Estate of Johnson v. Randall Smith, Inc.,* 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶22, citing *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032.

{¶48} "'* * * [T]he term "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record.' *State v. Underwood,* 11th Dist. No. 2008–L–113, 2009-Ohio-2089, 2009 WL 1177050, ¶ 30, citing *State v. Ferranto,* 112 Ohio St. 667, 676–678, 148 N.E. 362 (1925). * * *[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler,* 2d Dist. No. 09–CA–54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not

enough, without more, to find error.' *Id.* at ¶ 67." *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶70.

**{¶49}** "All relevant evidence is admissible * * *." Evid.R. 402. Relevant evidence is defined as evidence: "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evid.R. 403(A) requires the exclusion of relevant evidence if, "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

**{¶50}** Moreover, Evid.R. 608(B) *requires* the exclusion of extrinsic evidence offered to support or attack a witness' character for truthfulness. It allows a witness' character for truthfulness, "in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

**{¶51}** The trial court conducted a hearing on this issue the morning of the second day of trial. Croff alleges that Edwards failed to check the box corresponding to the individual's race on many of these canine use reports and that this failure demonstrates that Edwards was being untruthful because these incomplete reports involved black males. Thus, Croff argues that this bolsters his testimony that he was being targeted because of his race. The trial court, however, disallowed Croff's proposed exhibits because these canine use reports lacked any probative value and they were not relevant.

13

{¶52} As argued by the state, the introduction of these reports is contrary to Evid.R. 608(B), and the defense's proffered reason for introducing these reports requires conjecture as to why Edwards did not indicate the individuals' race on the reports and speculation that he did not include this information in order to conceal his racial profiling. Accordingly, the trial court did not abuse its discretion, and Croff's third assigned error lacks merit.

{¶53} Croff's final assigned error argues that his conviction is against the manifest weight of the evidence.

{¶54} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth *** juror"' and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs [v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211.] See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶55} If the trial court's judgment results from a jury trial, it can only be reversed on manifest weight grounds by a unanimous concurrence of all three judges on the appellate panel reviewing the case. *Id.* at 389. The fact that the evidence is susceptible

to more than one interpretation does not render a conviction against the manifest weight of the evidence. *State v. Ramey*, 2d Dist. Clark No. 2014-CA-127, 2015-Ohio-5389, 55 N.E.3d 542, ¶50, appeal not allowed, 145 Ohio St.3d 1458, 2016-Ohio-2807. "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Id.* at ¶51.

{¶56} Patrolman Edwards, a canine handler, testified at trial and confirmed that he pulled Croff over on the morning in question at 1:24 a.m. based on his failure to come to a complete stop. Croff was driving through a high-crime area. Upon interacting with Croff, Edwards explained that he seemed nervous based on his elevated breathing and shaky hands. Croff was likewise reluctant to make eye contact with Edwards, who said Croff looked toward the center console when he spoke. Edwards asked if he had any guns or weapons, and Croff responded no, stating he was on parole.

{¶57} Edwards told Croff to get out the car so he could conduct a dog sniff of the vehicle. Edwards began a pat down search and Croff fled on foot. Edwards chased Croff, and saw Croff put his hand into his pocket. Croff surrendered. Edwards then noticed that his right pocket was inside out.

{¶58} After an extensive search of the snow, Edwards ultimately found a plastic baggie of crack cocaine on top of the snow several feet from Croff's footprints where he had ran. Edwards explained that they did not initially find this because they were searching for a gun, not drugs. And although Edwards did not see Croff throw the baggie of crack cocaine, he believed that he did.

15

{¶59} The mobile video recording was played for the jury and submitted into evidence. Defense counsel points out that later on in the recording, before the baggie was found, an individual can be seen walking down the street. Edwards explained that the area of the chase had not been taped off because that is not normal Warren City Police Department routine.

{¶60} Croff testified and explained that he ran because he was afraid because he had been drinking before he was stopped. Croff denied that the crack cocaine found belonged to him. On cross-examination, Croff admitted that he had prior convictions for aggravated burglary and conspiracy with intent to distribute.

{¶61} Upon reviewing the evidence, we do not find the jury's verdict is against the manifest weight of the evidence. The jury evidently believed Edwards' testimony over Croff's. Furthermore, it could reasonably infer from the evidence that the baggie of crack cocaine belonged to him since it was found in his path of travel while fleeing the police. Accordingly, his fourth and final assigned error lacks merit.

{¶62} The trial court's decision is affirmed in full.


CYNTHIA WESTCOTT RICE, P.J.,

DIANE V. GRENDELL, J.,

concur.