[Cite as *State v. Reuschling*, 2025-Ohio-516.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-P-0045 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| DAVID L. REUSCHLING, | |
| Defendant-Appellant. | Trial Court No. 2021 CR 01135 |

# O P I N I O N

Decided: February 18, 2025
Judgment: Affirmed

*Connie J. Lewandowski*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*George G. Keith*, 135 Portage Trail, Cuyahoga Falls, OH 44221 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, David L. Reuschling, appeals his convictions for aggravated drug trafficking and aggravated possession of drugs. We affirm.

{¶2} In 2021, an Ohio State Highway Trooper stopped a vehicle driven by Reuschling for a suspected window-tint violation. During the stop, a canine officer arrived on the scene and conducted a sniff of the vehicle. The canine alerted, and officers then searched the interior of the vehicle, locating suspected methamphetamines in the center console. After arresting Reuschling, officers discovered additional suspected methamphetamine in his pants' pocket.

{¶3} Thereafter, the Portage County Grand Jury returned an indictment charging Reuschling with aggravated trafficking in drugs, a second-degree felony, in violation of R.C. 2925.03, and aggravated possession of drugs, a second-degree felony, in violation of R.C 2925.11.

{¶4} Reuschling initially pleaded not guilty and moved to suppress evidence obtained as a result of the traffic stop, arguing that the stop was unconstitutionally prolonged to await the canine. Following a hearing, the trial court overruled Reuschling's motion. Subsequently, Reuschling changed his plea to no contest on each count. The trial court found Reuschling guilty and set the matter for sentencing. Thereafter, the court imposed concurrent prison sentences of 5 to 7.5 years on each count.

{¶5} In his sole assigned error, Reuschling argues:

> The trial court erred in overruling Defendant-Appellant's motion to suppress by finding the State Trooper did not unreasonably and unlawfully extend detention at a traffic stop to effectuate a canine sniff in violation of the Fourth Amendment to the United States Constitution and Article 1 Section 14 of the Ohio Constitution and current Ohio legal precedent.

{¶6} "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures." *State v. Croff*, 2017-Ohio-8629, ¶ 22, citing *Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Polk*, 2017-Ohio-2735, ¶ 12. "A traffic stop by law enforcement is a seizure that must comply with the Fourth Amendment's reasonableness requirement." (Citation omitted.) *Croff* at ¶ 24. "[E]vidence obtained through unlawful searches and seizures is inadmissible" and thus appropriately suppressed prior to trial. *State v. Young*, 146 Ohio App.3d 245, 257 (11th Dist. 2001),

2

citing *United States v. Leon*, 468 U.S. 897, 916 (1984); and *Mapp v. Ohio*, 367 U.S. 643 (1961).

**{¶7}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366. Therefore, we accept the trial court's findings of fact that are supported by competent, credible evidence. *Burnside* at ¶ 8. We then review, de novo, whether those facts satisfy the applicable legal standards. *Id.*; *State v. Eggleston*, 2015-Ohio-958, ¶ 18 (11th Dist.).

**{¶8}** Here, Reuschling does not challenge the following facts elicited from the trooper at the suppression hearing. At 10:34 p.m. on February 4, 2021, the trooper stopped the vehicle driven by Reuschling after observing that the windows appeared too darkly tinted. The stop was recorded on dashcam video, which the trooper authenticated at the hearing.

**{¶9}** After the trooper stopped Reuschling, he approached the vehicle with a window-tint measuring device. Reuschling identified himself to the trooper and informed the trooper that he did not have his driver's license with him. Reuschling was not the registered owner of the vehicle, and the license plates were expired. Reuschling explained that he had just purchased the vehicle that day from his son-in-law. While in the vehicle, Reuschling was moving items in the car, "[j]ust looking the same spots over and over again, grabbing the same thing, moving them around from one position to another position, back to the same position, back to the position that he had just removed

3

it from[, which] indicated [to the trooper] that there was just something else going on." The trooper was unsure if the behavior indicated impairment, drug use, stimulation, or something else. In addition, the trooper noticed that Reuschling was speaking quickly, and his pupils were constricted, which could also signal impairment. Reuschling informed the trooper that he was driving home from a friend's house by "Drug Mart," but he seemed uncertain as to where his friend lived.

{¶10} While Reuschling was still seated in the vehicle, the trooper tested the window tint and confirmed that it was darkened past the legal level. The trooper requested Reuschling exit the vehicle, and he then escorted Reuschling to his cruiser to verify his identity and to obtain information relative to the vehicle's ownership. As they approached the cruiser, Reuschling touched his pants' pockets despite the trooper instructing him not to do so. The trooper then conducted a pat-down search of Reuschling and placed him in the back of the cruiser.

{¶11} Based on the trooper's observations, he suspected that Reuschling was impaired. Approximately nine minutes after the stop, the trooper called for a canine unit. After confirming Reuschling's identity and the vehicle information and speaking with Reuschling regarding his physical condition, the trooper began administering field sobriety tests. While conducting the horizontal and vertical gaze nystagmus tests, a backup officer and the canine unit arrived. The trooper then completed administering the walk and turn and one-leg stand tests, determined Reuschling was not impaired, and walked Reuschling to the trooper's cruiser. While outside the cruiser, the officer informed Reuschling that he was not under arrest, read him his *Miranda* rights, and informed him that the canine was going to perform a sniff of the vehicle. The trooper placed Reuschling

4

back in the cruiser. Within two minutes of Reuschling reentering the cruiser, approximately 24 to 25 minutes after the initiation of the stop, the canine sniff was performed, and the canine alerted. Following a search of the vehicle and Reuschling's person, the officers located methamphetamine in the center console of the vehicle and in Reuschling's pants' pocket.

{¶12} On appeal, Reuschling does not challenge the original basis for the traffic stop. Instead, he maintains that, based on the above facts, the stop was unconstitutionally prolonged to await the canine unit because the trooper lacked a reasonable suspicion of criminal activity to continue the detention for longer than necessary to issue a warning or citation for the window-tint violation.

{¶13} Although a traffic stop is a "seizure" for purposes of the Fourth Amendment, a canine search or sniff in a public place does not constitute a "search." *State v. Balanik*, 2016-Ohio-3511, ¶ 9-13 (11th Dist.). Following a valid traffic stop, an officer may delay the motorist for a sufficient period of time "'to run a computer check on the driver's license, registration, and vehicle plates.'" *State v. Batchili*, 2007-Ohio-2204, ¶ 12, quoting *State v. Howard*, 2006-Ohio-5656, ¶ 15 (12th Dist.). "A traffic stop is not unconstitutionally prolonged when permissible background checks have been diligently undertaken and not yet completed at the time a drug dog alerts on the vehicle." *Batchili* at syllabus. Further, if the officer encounters additional facts giving rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may continue to detain the motorist to investigate those new concerns. *Batchili* at ¶ 15; *Howard* at ¶ 16. A court evaluates the totality of the circumstances to determine whether the duration of the stop was reasonable. *Batchili* at ¶ 12.

5

{¶14} Here, there is no dispute that the canine unit arrived while the trooper was conducting field sobriety tests on Reuschling, and the canine sniff and alert occurred directly after the field sobriety tests, prior to the trooper issuing a citation or warning for the window tint, the original basis for the stop. Reuschling presents no argument that the trooper was less than diligent in running the background checks and investigating for impairment. Thus, the issue of whether the stop was unreasonably prolonged turns upon whether the trooper had a reasonable suspicion of impairment justifying the administration of the field sobriety tests which prolonged the stop.

{¶15} Although Reuschling maintains that the trooper merely had an "inchoate and unparticularized hunch that criminal activity was afoot," the trooper identified several indicia of possible impairment. The trooper testified that Reuschling's pupils were constricted, he was speaking very quickly, he rearranged items in the vehicle, he reached toward his pants pockets despite the trooper's instructions not to do so, and he was unable to identify his previous location with specificity. Based on the totality of the circumstances, we conclude that the trooper possessed a reasonable suspicion, supported by specific and articulable facts, that Reuschling was impaired, justifying the continued detention of Reuschling to perform the field sobriety tests. *See State v. Flack*, 2023-Ohio-1705, ¶ 23 (3d Dist.).

{¶16} The canine sniff was conducted upon completion of the field sobriety tests, and did not measurably prolong the stop, as the trooper had not yet issued a citation or warning for the window tint due to the intervening investigation for impairment. *Compare State v. Casey*, 2014-Ohio-2586 (12th Dist.) (traffic stop unjustifiably prolonged past the period necessary to issue the citation after completing field sobriety tests). Accordingly,

6

Case No. 2024-P-0045

the stop was not unconstitutionally prolonged to conduct the sniff. Reuschling's sole assigned error lacks merit.

{¶17} The judgment is affirmed.


MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

7